# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

ADELINA MCCULLEY,
CLARENCE J. MCCULLEY, and
JOHN M. RICHMOND,

    Plaintiffs,

v.                                     CASE NO. 8:17-cv-1681-T-26MAP

DETECTIVE JEFFREY JONES (PCSO),
individually, and GRADY JUDD, in his
official capacity as Sheriff of the Polk
County Sheriff's Office,

    Defendants.
_____/

# **O R D E R**

**BEFORE THE COURT** is Defendants' Motion to Dismiss Complaint (Dkt. 9), and Plaintiff's Response in Opposition with Exhibit A attached (Dkt. 16). After careful consideration of the allegations of the Complaint (Dkt. 1), the amended arrest warrants attached to the motion (Dkt. 9-1), and the applicable law, the Court concludes the motion is due to be granted as to the federal claims.

## ALLEGATIONS

The circumstances giving rise to the arrests of the three Plaintiffs involved the theft of approximately 80 citrus hauling trailers valued at between $5,000 and $10,000.[1] Three other individuals, including Donald Mosley, were identified in the actual theft of the trailers.[2] Mr. Mosley admitted in his post-<u>Miranda</u> statement that some of the trailers were sold to T&M Salvage (T&M), a licensed secondary metals recycler owned by Plaintiff Adalina McCulley.[3] Plaintiff John Richmond was the scale operator of T&M, and Plaintiff Clarence McCulley was the manager of American Salvage and Trading, a business that shared office space with T&M.[4]

At T&M, Mr. Mosley dealt only with Bernhard Powell, who was the buyer of materials there.[5] When Mr. Mosley was asked for paperwork, he responded that he bought the trailers from individuals who did not have titles for the trailers.[6] According to

---

[1] <u>See</u> docket 1, paragraph 17, and docket 9-1 (Amended Arrest Warrants).

[2] <u>See</u> docket 1, paragraph 18.

[3] <u>See</u> docket 1, paragraphs 16 and 19.

[4] <u>See</u> docket 1, paragraph 16.

[5] <u>See</u> docket 1, paragraphs 16 and 21 ("When Mr. Mosely conducted the transactions at T&M Salvage, the transactions were conducted only with Mr. Powell. Mr. Mosely would specifically ask for Mr. Powell and only deal with Mr. Powell.").

[6] <u>See</u> docket 1, paragraph 22 ("When asked for paperwork for the trailers, Mr. Mosely would respond that he couldn't provide the paperwork because the individual he bought them off of didn't have the titles. Other times, Mr. Mosely would represent that he did have titles for the trailers.").

Plaintiffs, the stolen trailers were "barely in working order" and were "missing multiple tires."[7] Nevertheless, when the Polk County Sheriff's Office asked for the records of T&M, all Plaintiffs cooperated and also gave statements to Defendant Detective Jones.[8]

With respect to Mr. Richmond, there was allegedly no evidence that Mr. Richmond made management decisions for T&M.[9] The complaint even alleges that the "evidence suggests and the discovery is expected to show that Mr. Richmond was charged to extract favorable testimony from him against the McCulley's."[10] Although not expressly alleged in the complaint, Plaintiffs contend that none of the individuals at the other two scrap yards to which Mr. Mosely sold the trailers were ever arrested.[11] Out of the 80 trailers stolen, Plaintiffs were charged with acquiring 40 of them.[12] Each Plaintiff

---

[7] See docket 1, paragraph 27 ("The trailers brought into T&M Salvage were barely in working order and missing multiple tires. As a result, the trailers were treated as unprepared steel."). Plaintiffs also claim that when the Polk County Sheriff's Office and the State Attorney's Office hosted a meeting with the secondary metals recycler and salvage industries, the officers not only failed to advise them how to treat citrus trailers but wholly failed to mention trailers at all. See docket 1, paragraphs 28-30.

[8] See docket 1, paragraph 25.

[9] See docket 1, paragraph 36 (". . .Despite a complete lack of evidence that Mr. Richmond made management decisions, interacted with the trailer thieves, or in any way colluded to commit criminal acts, Detectives included Mr. Richmond as a defendant. . . .").

[10] See docket 1, paragraph 36.

[11] See docket 1, paragraph 19 ("Mr. Mosely also admitted to selling citrus trailers to a scrap yard in Hardee County and another scrap yard in Plant City.").

[12] See docket 9-1 ("Based on the printed copies of the transaction records including photos of the transactions, the defendant and three co-defendants committed the

and Mr. Powell were charged with 40 counts of unlawful purchase of a motor vehicle, 40 counts of grand theft of motor vehicle, and 40 counts of dealing in stolen property.[13] The grand theft charges against the Plaintiffs were dropped, and six of the remaining 80 counts were dropped.[14] Mrs. McCulley was found not guilty at her jury trial.[15] Eventually all the charges were dropped against Mr. Richmond and Mr. Powell.[16] Mr. McCulley pleaded guilty to one misdemeanor count of transferring a trailer without delivering a certified title.[17]

## ARREST WARRANTS

Detective Jones reviewed the records of T&M which contained photographs of the transactions. The records did not contain certificates of title, salvage certificates, certificates of destruction, or derelict vehicle certificate applications from the sellers of the trailers.[18] The records showed that T&M classified the trailers as "unprepared steel."

---

unlawful destruction of a motor vehicle (40 counts) by circumventing the statutory requirements of 319.30 by not obtaining a certificate of title, salvage certificate, certificate of destruction or a derelict motor vehicle certificate application from the seller of the trailers.").

[13] See docket 1, paragraph 33.

[14] See docket 1, paragraph 34.

[15] See docket 1, paragraph 35.

[16] See docket 1, paragraph 36.

[17] See docket 1, paragraph 35.

[18] Section 319.30(7)(a)(4) of the Florida Statutes requires that a secondary metals recycler who purchases citrus hauling trailers must obtain a certificate of title, a salvage

Each Plaintiff and Mr. Powell stated that they bought the trailers as scrap metal and did not obtain any paperwork or titles nor did they obtain a derelict motor vehicle certificate application from the sellers. Detective Jones further noted that the Plaintiffs and Mr. Powell cut the trailers up into scrap metal and resold the metal to other secondary metals recyclers to eliminate the possibility of inspecting the trailers for identifying numbers or markings. Each arrest affidavit has a dated signature of the assistant state attorney in the economic crimes division. The Defendants urge this Court to dismiss the complaint because each Plaintiff was arrested pursuant to a valid arrest warrant and there was probable cause for the arrests. Detective Jones argues that the § 1983 claim should be dismissed based on qualified immunity because there was no constitutional violation and there was arguable probable cause for the arrests.

## **STANDARD**

### *Allegations of the Complaint*

The complaint must allege "enough" facts, accepted as true and construed in the light most favorable to the plaintiff, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); Bell Alt. Corp v. Twombly, 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 1964-65, 1974, 167 L.Ed.2d 929 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds'

---

certificate, a certificate of destruction, or a derelict motor vehicle certificate.

of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S.Ct. at 1964-65 (internal citations omitted). Legal conclusions "couched" as facts need not be accepted as true. Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949. The conclusory legal allegations must first be separated out, and then "the remaining well-pleaded factual allegations" may be accepted as true and determined whether they state a plausible entitlement to relief. Franklin v. Curry, 738 F.3d 1246, 1251 (11th Cir. 2013). Determining whether the claim is plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679, 129 S.Ct. at 1950.[19] The factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

Generally, only the four corners of the complaint may be considered in ruling on a motion to dismiss pursuant to Rule 12(b)(6). Cline v. Tolliver, 434 F. App'x 823, 824 (11th Cir. 2011) (unpublished opinion) (citing Speaker v. U.S. Dep't of Health and Human Servs. Ctrs. for Disease Control and Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010)). The court may consider exhibits if referenced in the complaint and attached to the

---

[19] The Eleventh Circuit has clarified that there is no more heightened pleading standard in civil rights cases. Hoefling v. City of Miami, 811 F.3d 1271, 1276 (11th Cir. 2016) ("We expressly held in Randall, and reaffirm today, that 'whatever requirements our heightened pleading standard once imposed have since been replaced by those of the Twombly-Iqbal plausibility standard . . . [which] applies to all civil actions . . .'") (citing Randall v. Scott, 610 F.3d 701, 702 n.2 (11th Cir. 2010)).

defendant's motion to dismiss. Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997). The court may "consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." SFM Holdings, Ltd. v. Banc of Am. Secs., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010). The Rule 12(b) motion need not be converted into a Rule 56 summary judgment motion "where certain documents and their contents are undisputed." Speaker, 623 F.3d at 1379.

### *Qualified Immunity*

The qualified immunity inquiry is intertwined with the Rule 12(b)(6) standard at the dismissal stage. Keating v. City of Miami, 598 F.3d 753, 760 (11th Cir. 2010). Qualified immunity shields government officials from individual liability as long as the acts were committed within their discretionary authority "unless the official's conduct violates clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." Id., 598 F.3d at 762 (citations and internal quotation marks omitted).[20] An arrest falls within the officer's discretionary function and requires only "arguable probable cause" to fulfill the clearly-established element. Case v. Eslinger, 555 F.3d 1317, 1327 (11th Cir. 2009) (citing Lee v. Ferraro, 284 F.3d 1188,

---

[20] "Qualified immunity only protects public officials from lawsuits brought against them in their individual capacity." Young Apartments, Inc. v. Town of Jupiter, 529 F.3d 1027, 1047 (11th Cir. 2008) (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1184 n. 16 (11th Cir. 1994)). A § 1983 claim brought against a sheriff in his official capacity imposes liability against the department he or she represents. Welch v. Laney, 57 F.3d 1004, 1008 (11th Cir. 1995) (citing Brandon v. Holt, 469 U.S. 464, 471-72, 105 S.Ct. 873, 877-78, 83 L.Ed.2d 878 (1985)).

1195 (11th Cir. 2002)). "Arguable probable cause exists 'where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest.'" Case, 555 F.3d at 1327 (citation omitted). After establishing that the public official was acting within the scope of his discretionary authority, then the plaintiff must show that the official violated a constitutional right and the right was clearly established at the time of the alleged violation. Fish v. Brown, 838 F.3d 1153, 1162 (11th Cir. 2016) (citations omitted). It does not matter which factor is considered first. Fish, 838 F.3d at 1162 (citing Pearson v. Callahan, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 2009)).

### COUNTS I, IV, and VII
### § 1983 FALSE ARREST AGAINST DETECTIVE JONES

Plaintiffs alleges three separate counts as to each Plaintiff for false arrest pursuant to § 1983. Plaintiffs specifically allege that the Plaintiffs were unlawfully arrested when Detective Jones "caused and authorized" their detention "when he submitted an arrest affidavit . . . and applied for an arrest warrant, which led to [the] arrest" of Plaintiffs.[21] Plaintiffs allege the arrest was without arguable probable cause.[22] According to Plaintiffs, the facts and circumstances within Detective Jones' knowledge "would not cause a prudent person to believe" that Plaintiffs had committed an offense.[23] "[B]ased on the

---

[21] See docket 1, paragraphs 45, 61, and 77.

[22] See docket 1, paragraphs 46, 62 and 78.

[23] See docket 1, paragraphs 47, 63 and 79.

condition of the trailers and ambiguity of the law no criminal intent to violate the law could have been perceived by a reasonable officer" in the same circumstances and possessing the same knowledge as Detective Jones.[24]

Although not addressed by either party, the § 1983 count is labeled false arrest and not malicious prosecution. Plaintiffs were arrested pursuant to arrest warrants and therefore, even if the arrest warrants were invalid, their claim is one of malicious prosecution. Carter v. Gore, 557 F.App'x 904, 906 (11th Cir. 2014) (citing Whiting v. Traylor, 85 F.3d 581, 585 (11th Cir. 1996)).[25] Although the complaint does not use the term "maliciously prosecuted" as it did in Carter, it alleges that Detective Jones caused the arrest warrants to be issued without arguable probable cause. "[A]n officer's liability for malicious prosecution flows from initially securing an invalid warrant . . . ." Carter, 557 F.App'x at 907. The complaint therefore technically alleges a § 1983 malicious prosecution claim, which must be decided on the existence of arguable probable cause

---

[24] See docket 1, paragraphs 48, 64 and 80.

[25] See also Smith v. City of Fairburn, No. 16-11800, 2017 WL 603840, at *4 n.6 (11th Cir. Feb. 15, 2017); Shew v. Horvath, No. 8:16-cv-766-T-33JSS, 2017 WL 1399797, at *8 (M.D. Fla. Apr. 19, 2017), aff'd, No. 17-12023, 2017 WL 4417592 (11th Cir. Oct, 4, 2017) (unpublished order); Towns v. Beseler, No. 3:15-cv-140-J-34JBT, 2016 WL 5933400 (M.D. Fla. Oct. 12, 2016). Defendants cite Mack v. Mazzerella, 554 F.App'x 800 (11th Cir. 2014), for the proposition that the existence of arguable probable cause provides qualified immunity for Detective Jones from false arrest claims. Mack characterizes the claim as one for malicious prosecution, not false arrest, without discussing the distinction.

Detective Jones raises the affirmative defense of qualified immunity in the motion to dismiss. The arrests occurred within the scope of his discretionary authority as a deputy with the sheriff's office investigating the crimes associated with the citrus trailer thefts. Plaintiffs admit there is no dispute that Detective Jones was acting within his discretionary authority when he arrested Plaintiffs.[26] The burden now rests with the Plaintiffs to show that Detective Jones violated a constitutional right and that the constitutional right was clearly established at the time of the alleged violation, in either order. Fish, 838 F.3d at 1162 (citing Pearson, 555 U.S. at 236). Only if the law enforcement officer presented evidence to an independent intermediary, like a magistrate, that was insufficient to establish probable cause, and the officer would have known this fact, would his qualified immunity defense be unsuccessful. Carter, 557 F.App'x at 908 (citing Malley v. Briggs, 475 U.S. 335, 345, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986)).

Plaintiffs do not contend that Detective Jones fabricated evidence in the arrest affidavits, but that he recklessly disregarded and omitted material facts from the affidavits and therefore lacked arguable probable cause to arrest. Plaintiffs cite the following recklessly omitted facts. Detective Jones knew from Mr. Mosely's statement that none of the Plaintiffs participated in the actual transactions involving the citrus trailers. He knew that Mr. Mosely dealt only with Mr. Powell and none of the Plaintiffs. He should have

---

[26] See docket 16, page 11.

known that Mr. Richmond did not have the authority to make management decisions and there was no evidence that Mr. Richmond ever had any interaction with Mr. Mosely or the other two thieves. Detective Jones should have investigated the ownership of T&M so that he would have discovered Mrs. McCulley was listed as the owner of the business, not Mr. McCulley. Plaintiffs claim that all of these facts were recklessly disregarded sufficient to prevent a finding of arguable probable cause. The affidavits assume, according to Plaintiffs, that they were actively involved in dealing in stolen property based on the volume of purchases and destruction of the trailers; however, no arrests were made from the other two metal recyclers who purchased the remainder of the 80 citrus trailers. Plaintiffs even go so far as to allege that Mr. Richmond was arrested in order to put pressure on him to disclose facts about the other Plaintiffs.

Plaintiffs take issue with Detective Jones' failure to disclose his basis for concluding that the Plaintiffs knew or should have known about the conspiracy to steal citrus trailers. They challenge his assertion that the sheer volume of trailers purchased and destroyed, together with the trailers' dilapidated appearance, evidence Plaintiffs' active participation in dealing in stolen citrus trailers. The percentage of scrap metal from Mr. Mosely is minuscule, according to Plaintiffs, in comparison to T&M and American Salvage Trading's overall business. Plaintiffs claim the affidavits are devoid of any facts specifically tying Mrs. McCulley to the scheme other than her presence in the shop.

The essence of Plaintiffs' argument is that Detective Jones should have conducted a more thorough investigation, one that would have led to their exoneration. An officer, however, does not have the duty to "track down every lead" or to "seek out exculpatory evidence of which the officer is not aware." Shew v. Horvath, No. 17-12023, 2017 WL 4417592, at *3 (11th Cir. Oct, 4, 2017) (unpublished order) (quoting Kelly v. Curtis, 21 F.3d 1544, 1551 (11th Cir. 1994)). Nor does an officer have a duty "to prove every element of a crime before making an arrest," Pierce v. Clayton Ctny., Ga., No. 17-10815, (11th Cir. Nov. 21, 2017) (unpublished order) (quoting Jordan v. Mosley, 487 F.3d 1350, 1355 (11th Cir. 2007)).[27] Likewise, it is not necessary to prove each and every element of the crime with the facts recited in the affidavits. See Rhodes v. Kollar, 503 F.App'x 916, 924 (11th Cir. 2013). That all charges were dropped against John Richmond and that Mrs. McCulley was found not guilty on all counts, does not bar qualified immunity. See Zozula v. Florida, No. 6:10-cv-1588-Orl-28GJK, 2011 WL 2531203, at *4 (M.D. Fla. June 24, 2011).

Detective Jones knew that the stolen citrus trailers were sold to T&M. This fact is uncontested. He knew that all three Plaintiffs were located at or near T&M. Whether a

---

[27] In Pierce, unlike this case, the detective was allegedly the very person who removed from the stolen vehicle list the vehicle which the plaintiffs were accused of stealing. He allegedly told them that he mistakenly removed the vehicle from the list based on a clerical error; yet, he did not reveal these facts in the arrest affidavit, which facts were held to be material to a finding of probable cause. No such allegations of intentional wrongdoing on the part of Detective Jones were made in this case.

search would have revealed the owner of T&M as Mrs. McCulley instead of Mr. McCulley does not tend to either prove or disprove the issue of arguable probable cause.

Plaintiffs contest Detective Jones' finding in the affidavits that the trailers were not scrap when presented for purchase. Mr. Mosely told Detective Jones that he sold some of the trailers to T&M, and the records of T&M, which contained photographs, confirmed this statement and showed that the transactions classified the trailers as unprepared metal, or scrap. Detective Jones, as stated in his affidavits, relied on the photographs of the actual trailers taken from the Plaintiffs' own records to substantiate that the trailers were not originally scrap.[28] Although the records contained photographs and documented the transactions, there were no certificates of title, salvage certificates, certificates of destruction, or applications for derelict motor vehicle certificates as required by Florida law. The Plaintiffs acknowledged they did not collect paperwork. In the interviews of the Plaintiffs conducted by Detective Jones, each referred to the items brought in as "trailers," not scrap metal. The absence of any statutory paperwork in conjunction with the sales does not create an inference that the trailers were scrap, rather the opposite inference would be reasonable. The Plaintiffs' purchase of the trailers at below market price, cutting them up into scrap metal, and later reselling the scrap to other secondary

---

[28] The officer in Shew was permitted to rely on the engineer's report regarding prior sinkhole damage and was not required to personally inspect the house himself to observe whether sinkhole damage was obvious. Detective Jones could not have viewed the trailers upon presentment to T&M, but he relied on the photographs in the Plaintiffs' records.

metal recyclers creates an even greater objective inference that the Plaintiffs may have had something to hide.

Finally, Plaintiffs' urging that Detective Jones should have relied on one of the thief's statements is also unconvincing. Probable cause, a standard higher than arguable probable cause, requires that the law enforcement official have "reasonably trustworthy information" to believe that an offense has been committed. Wilson v. Attaway, 757 F.2d 1227, 1235 (11th Cir. 1985). Mr. Mosely, a thief of the 80 citrus trailers, gave a statement that T&M did not know anything about the stolen citrus trailers – "I just bring 'em in there and they buy 'em."[29] The word of a defendant, however, is not inherently trustworthy and certainly does not constitute trustworthy information that the Plaintiffs unequivocally did not know or should not have even questioned the trailers brought to them for purchase.[30]

Looking at the sufficiency of the factual allegations of the complaint, and taking them as true, there are no facts to plausibly suggest that Detective Jones secured arrest warrants without arguable probable cause. The affidavits contain more than mere conclusory assertions that the Plaintiffs committed the crimes of theft, unlawful purchase

---

[29] See docket 16-1, page 4.

[30] Kingsland v. City of Miami, 382 F.3d 1220 (11th Cir. 2004), relied on by Plaintiffs is distinguishable. Plaintiffs' allegations do not show that Detective Jones conducted a biased investigation as was the case in Kingsland. Kingsland involved an arrest made for DUI, after the driver suffered injuries obviously resulting from the collision and the plaintiff tested negative for both alcohol and cannabis, which further investigation would have revealed.

of a motor vehicle, and dealing in stolen property. The only information Detective Jones could have allegedly ignored was the statement of Mr. Mosely that the Plaintiffs did not know about the theft ring, which information could not be assumed as trustworthy. Missing are any allegations that the Plaintiffs tried to insure the trailers were not stolen. While the Plaintiffs may believe they were targeted apart from the other two companies that purchased the stolen trailers and may believe that Detective Jones should have investigated further, the Court finds that these two factors do not change the analysis. Thirty-seven of the 80 stolen trailers were sold to T&M. Although this number may be small in comparison to all of T&M's scrap metal purchases, it constituted almost 50 per cent of the trailers stolen, which was the information Detective Jones knew for a fact based on the Plaintiffs' own records at the time he applied for the arrest warrants. In the context of probable cause, much less arguable probable cause, a reasonable officer in Detective Jones' same circumstances and possessing the same knowledge could have reasonably believed that probable cause existed to arrest them for the crimes. While it is possible that the arrests could have constituted a violation of the Fourth Amendment had there been intentional or reckless omissions in the affidavits, the allegations of the complaint do not establish that any such constitutional right to be free from seizures was clearly established on these alleged facts, including the ones missing from the affidavits, at the time of the alleged violation.

## SUPPLEMENTAL JURISDICTION

Because the Court has resolved Plaintiffs' federal claims against Detective Jones in favor of him, only Plaintiffs' state law claims against Detective Jones (Counts II, V, and VIII) and Sheriff Judd (Counts III, VI, and IX) remain pending. Title 28, section 1367 of the United States Code provides that the district courts may decline to exercise supplemental jurisdiction over state claims where it has dismissed all the underlying federal claims. See 28 U.S.C. § 1367(c)(3). In making this determination, the Court should consider factors such as "comity, judicial economy, convenience, fairness, and the like." Crosby v. Paulk, 187 F.3d 1339, 1352 (11th Cir. 1999) (quoting Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 257 (1st Cir. 1996)). Although this decision is discretionary, see Englehart v. Paul Revere Life Ins. Co., 139 F.3d 1346, 1350 (11th Cir. 1998), the dismissal of state law claims is strongly encouraged where the federal claims are dismissed prior to trial. Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004); Baggett v. First Nat'l Bank, 117 F.3d 1342, 1353 (11th Cir. 1997). Where the Court declines to exercise supplemental jurisdiction over such claims, the claims should be dismissed without prejudice so they can be refiled in the appropriate state court. Crosby, 187 F.3d at 1352. Section 1367(d) gives "the plaintiff at least 30 days to re-file in state court after a federal court declines to exercise supplemental jurisdiction." Personalized Media Commc'ns, LLC v. Scientific-Alt., Inc., 493 F. App'x 78, 82 n.1 (11th

Cir. 2012) (unpublished opinion).[31]  In the interest of judicial economy and convenience, the Court declines to exercise supplemental jurisdiction over the remaining state law claims in this action.

**IT IS** therefore **ORDERED AND ADJUDGED** as follows:

(1)   Defendants' Motion to Dismiss Complaint (Dkt. 9) is **GRANTED** but only to the extent that the federal claims in Counts I, IV, and VII of the Complaint alleged against Defendant Jones are dismissed with prejudice.  The motion is otherwise denied without prejudice as to all other counts.

(2)   Counts II, III, V, VI, VIII, and IX are dismissed without prejudice to bringing them in state court.

(3)   The Clerk is directed to enter judgment in favor of Defendant Jones as to Counts I, IV, and VII of the Complaint and against Plaintiffs, terminate any pending motions, and **close** the case.

**DONE AND ORDERED** at Tampa, Florida, on November 22 , 2017.

    s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

---

[31]   State law claims initially brought in federal court with "related" federal claims "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."  28 U.S.C. § 1367(d).

**COPIES FURNISHED TO**:
Counsel of Record